1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8               FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   TERRY L. MEIER,                                No. C 05-04404 WHA

11            Plaintiff,

12      v.                                          **ORDER GRANTING IN PART
                                                    AND DENYING IN PART**
13   UNITED STATES OF AMERICA,                      **MOTION FOR SUMMARY
                                                    JUDGMENT**
14            Defendant.
                                         /
15

16                              **INTRODUCTION**

17         In this tort action against the United States, the government has filed an omnibus motion

18   for summary judgment as to all ten claims in the complaint.  Plaintiff Terry Meier, representing

19   himself, alleges various types of misconduct by the Veterans Administration in connection with

20   a series of colonoscopies he underwent between 2002 and 2003.  For the reasons stated below,

21   only Claims One, Two, and Three, which allege a failure to secure Meier's informed consent,

22   survive the government's motion.  Accordingly, the government's motion is **GRANTED IN PART**

23   and **DENIED IN PART**.

24                               **STATEMENT**

25         The following material facts are not in dispute.  Meier's suit arises out of three

26   colonoscopy procedures on September 17, 2002, December 19, 2002, and June 23, 2003, at a

27

28

*United States District Court*

*For the Northern District of California*

1   Veterans Administration Outpatient Clinic in Martinez, California.  Each of the procedures was

2   conducted by Dr. Eddie Cheung (Compl. ¶¶ 16–29).

3         Meier met with Dr. Cheung before and after each colonoscopy.  During the meetings,

4   treatment options and progress were discussed.  Before each procedure Meier signed a one-page

5   "Request for Administration of Anesthesia and for Performance of Operations and Other

6   Procedures" form, which included a warning that "possible problems" from a colonoscopy

7   could include "bleeding, a hole through the bowel wall (perforation), infections, drug reactions,

8   strain on the heart or lungs, or death" (Caston Exhs. H–U; Nov. 16 Dowling Exh. A at 223).

9         After the first procedure, Dr. Cheung met with Meier.  Cheung informed Meier that a

10  rectal lesion that had been partially removed during the procedure was determined to be a

11  tubulovillous adenoma.  Dr. Cheung told Meier of two treatment options for removing the

12  lesion:  surgery or a repeat colonoscopy.  Dr. Cheung also told Meier about some of the

13  potential consequences of both options, including the risk of perforation during another

14  colonoscopy.  Meier did not want to undergo surgery and chose to have another colonoscopy

15  (Nov. 16 Dowling Exh. A at 134–136, 223; Dec. 7 Dowling Exh. C at 292; Caston Exh. L).

16        During the second colonscopy on December 19, 2002, unbeknownst to Meier (and

17  apparently Dr. Cheung), Meier's cecum was perforated.  He was discharged from the clinic and

18  allowed to return home.  Early the next morning, he began experiencing "very sharp abdominal

19  pains."  Meier's December 19 discharge sheet indicated that if he felt "severe abdominal pain,"

20  he should "go to the nearest hospital or dial 911."  Handwritten on the discharge sheet was a

21  number for "ER Mather," the phone number for Mather Air Force Base in Mather, California.

22        Throughout the day, Meier took taking pain pills that would "knock [him] out."  In the

23  afternoon, Meier called the 1-800 number for the VA's Oakland Outpatient Clinic.  He did not

24  speak to anyone but left a message.  He then called the number on his discharge sheet for

25  Mather Air Force Base.  He explained his problem to the person who answered the phone, who

26

27

28                                                    2

**United States District Court**
For the Northern District of California

1  told him to wait for a call back.  According to Meier, he never received a return phone call.  He

2  concedes that he did not call any of the phone numbers again.

3  After about five hours of waiting, Meier called a friend and asked her to take him to the

4  emergency room.  Emergency surgery was required to repair the perforation (Meier Exh. 10;

5  Nov. 16 Dowling Exh. A at 242, 247, 250–51; Compl. ¶ 22).

6  Meier underwent a third colonoscopy on June 23, 2003.  Meier does not allege that any

7  medical complications arose following that procedure.

8  Meier's complaint asserts ten claims against the government under the Federal Tort

9  Claims Act.  Claims One through Three allege a failure to obtain Meier's informed consent

10  prior to the colonoscopies.  Claim Four alleges negligent hiring of Dr. Cheung.  Claim Five

11  alleges a failure to train and supervise Dr. Cheung.  Claim Six alleges a failure to create policies

12  for responding to medical emergencies.  Claim Seven alleges a failure to provide peer review.

13  Claim Eight alleges a failure to produce medical records.  Claim Nine alleges a failure to

14  answer Meier's questions concerning care.  Claim Ten alleges unauthorized publication of

15  medical records.  Meier seeks recovery only for emotional damages that he alleges he suffered

16  as a result of the VA's conduct and for no other form of recovery.

17  This case was filed in October 2005.  An attorney, Meier has represented himself in all

18  proceedings.[1]  Between May and November 2006, the parties made numerous applications

19  regarding various discovery-related problems, most of them initiated by Meier.  Over that

20  period, the Court held three hearings and issued thirteen orders ruling on all the discovery

21  disputes.  In one particularly noteworthy dispute, Meier refused to submit to an independent

22  medical evaluation even though he had placed his mental condition at issue by seeking

23  emotional-distress damages.  Meier was ordered to submit to the IME, but refused.  He

---

[1] The State Bar of California's website indicates that Meier is "inactive."

United States District Court

For the Northern District of California

3

1    petitioned for a writ of mandamus and sought a stay of the order before the Ninth Circuit, which

2    denied his requests.[2]

3        The government now moves for summary judgment on all of Meier's claims.

4                                                    **ANALYSIS**

5        **1.    JURISDICTION TO CONSIDER MEIER'S CLAIMS UNDER THE FTCA.**

6        The FTCA is a limited waiver of the United States' sovereign immunity.  It covers tort

7    claims arising out of the conduct of a government employee acting within the scope of his or

8    her employment "under circumstances where the United States, if a private person, would be

9    liable to the claimant in accordance with the law of the place where the act or omission

10   occurred."  28 U.S.C. 1346(b)(1).  "Sovereign immunity is jurisdictional in nature.  Indeed, the

11   terms of the United States' consent to be sued in any court define that court's jurisdiction to

12   entertain the suit."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

13       The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the

14   place' means law of the State — the source of substantive liability under the FTCA."  The tort

15   liability alleged by a plaintiff must "arise from state statutory or decisional law."  *Delta Sav.*

16   *Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001).  That state law "must impose on the

17   defendants a duty to refrain from committing the sort of wrong alleged here."  Each of Meier's

18   claims under the FTCA will only be valid if the claim would be valid under California law.  *See*

19   *Molzof v. United States*, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability

20   under the FTCA is generally determined by reference to state law.").

21       As the government points out, a plaintiff bringing suit in federal court has the burden of

22   demonstrating that subject-matter jurisdiction exists.  *See Tosco v. Comtys. for a Better Env't*,

23   236 F.3d 495, 496 (9th Cir. 2001).  The government contends that this Court lacks jurisdiction

24

25

26

27       [2]  During the mandamus proceeding, Meier was represented by an attorney.  Meier has continued to
     represent himself in the district court after the appeal.

28                                                        4

**United States District Court**
For the Northern District of California

1   under the FTCA because Meier's claims are either not violations of California tort law or are

2   not covered by the FTCA.

3          As explained below, this Court lacks jurisdiction to adjudicate most of Meier's claims

4   because he does not meet the threshold requirement of the FTCA that "United States, if a

5   private person, would be liable to [Meier] in accordance with the law of the place where the act

6   or omission occurred." 28 U.S.C. 1346(b)(1).  This order holds that some of Meier's claims, as

7   pled, may be considered by this Court pursuant to the FTCA.  For those claims, Meier has

8   cited — or the Court has found — decisional or statutory authority supporting claims of liability

9   for similar conduct by private persons in California.  For the remainder of his claims, however,

10  Meier has not established that a private person would be liable under those theories in

11  California.  Because the Court lacks jurisdiction to hear those claims pursuant to the FTCA, the

12  government's motion for summary judgment as to those claims must be granted.

13                          **A.     Claims One Through Three.**

14         The first three claims in Meier's complaint allege that he was given insufficient

15  information to inform his consent to the colonoscopies.  Failure to provide sufficient

16  information to support informed consent is a valid claim under California law.  Meier cites an

17  on-point California Court of Appeal decision:  "A physician violates his duty to his patient and

18  subjects himself to liability if he withholds any facts which are necessary to form the basis of an

19  intelligent consent by the patient to the proposed treatment." *Berkey v. Anderson*, 1 Cal. App.

20  3d 790, 803–04 (1969).  The California Supreme Court has held that failure to disclose inherent

21  risks of a consented-to medical procedure constitutes negligence by the physician. *See Cobbs v.*

22  *Grant*, 8 Cal. 3d 229, 240–41 (1972).  Because failure to obtain a patient's informed consent is

23  a valid claim under California law, the government may be sued under the FTCA on Claims

24  One through Three.

25

26

27

28                                              5

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

### B.      Claims Four and Five.

2        At first glance, Meier's fourth and fifth claims — alleging negligent hiring, training, and

3    supervision of Dr. Cheung — appear to be valid claims under state law.  Meier relies on *Elam v.*

4    *College Park Hospital*, 132 Cal. App. 3d 332, 340–41 (1982), which held that "as a general

5    principle, a hospital's failure to insure the competence of its medical staff through careful

6    selection and review creates an unreasonable risk of harm to its patients."  Accordingly, the

7    *Elam* court held that "a hospital may be held liable to a patient under the doctrine of corporate

8    negligence."  *Id.* at 346.

9        The problem for Meier on these claims lies in the FTCA's plain language.  The

10    government's sovereign immunity is only waived "where the United States, *if a private person*,

11    would be liable to the claimant in accordance with the law of the place where the act or

12    omission occurred."  28 U.S.C. 1346(b)(1) (emphasis added).  The language of the statute is

13    clear that the government may only be sued where an individual *person* would be liable under

14    state tort law.  In a different context, the Ninth Circuit has held that with respect to the FTCA,

15    the word "'persons' . . . does not include corporations."  *Adams v. United States*, 420 F.3d 1049,

16    1050 (9th Cir. 2005) (noting that "[t]he purpose of the FTCA also indicates that 'persons' is

17    limited to individuals").  Thus, the government will not be liable under the FTCA when a

18    plaintiff's claim is based on state law that would only hold a corporation — and not an

19    individual person — liable.

20        With respect to the case at bar, *Elam* only found that a hospital could be sued for failing

21    to ensure the competence of its employees under a *corporate* negligence theory.  *See Elam*, 132

22    Cal. App. 3d at 338 n.5 (noting that "'corporate negligence' has been commonly used to

23    describe hospital liability predicated . . . upon its violation of a duty — as a corporation —

24    owed directly to the patient which resulted in injury").  Meier has not cited — nor can the Court

25    find — any California decision extending a hospital's corporate liability to individual persons.

26    This order holds that because California law does not impose liability on a private person for a

27

28                                                              6

1    hospital's negligent hiring or supervision of medical staff, no liability can be imposed on the

2    government on the theories alleged in Claims Four and Five.[3]

3                    **C.      Claims Six and Seven.**

4            Conspicuously absent from Meier's opposition to the government's motion is any

5    statutory or decisional law supporting his sixth and seventh claims.  These are his claims

6    alleging a failure to ensure that VA employees properly respond to medical emergencies and a

7    failure to provide legally competent peer review.  The Court's independent research has

8    uncovered no statutory or decisional law supporting these theories as they are pled.

9            Regarding Claim Six, California Health and Safety Code Section 1799.110(a) states:

10   "*In any action for damages involving a claim of negligence against a physician and surgeon*

11   *arising out of emergency medical services provided in a general acute care hospital emergency*

12   *department*, the trier of fact shall consider, together with all other relevant matters, the

13   circumstances constituting the emergency, as defined herein, and the degree of care and skill

14   ordinarily exercised by reputable members of the physician and surgeon's profession in the

15   same or similar locality, in like cases, and under similar emergency circumstances."  Thus

16   California law expressly contemplates suits against individual physicians for the negligent

17   administration of "emergency medical services."

18           Claim Six of the complaint, however, does not allege negligent administration of

19   emergency medical care by any physician.  Instead, it alleges that the VA failed to:  (1) create

20   guidelines dealing with medical emergencies, (2) train VA employees to assist with medical

21   emergencies, and (3) establish policies for identifying and punishing employees who failed to

22

23

24           [3] Even if a hospital's corporate liability could be extended to individuals, summary judgment would be
     granted on these claims because Meier has not identified *any* genuine issues of material fact in this record
     regarding the hiring and supervision of Dr. Cheung.  Both sides agree that Dr. Cheung had a disciplinary record
25   and had been sued for malpractice.  Those facts alone, however, do not establish that the VA breached a duty of
     care to Meier by hiring or supervising Dr. Cheung.  The VA supervisors were aware of Dr. Cheung's history
26   when they hired him.  Meier has pointed to no facts that the VA either did not adhere to its established protocols
     for background checks when it hired Dr. Cheung or that those protocols were themselves deficient (Dec. 7
27   Dowling Exh. B at 33–36; Dec. 7 Dowling Exh. D at 275–277).

28                                                        7

*United States District Court*
For the Northern District of California

1    abide by the emergency policies (Compl. ¶ 39).  The Court can find no California decision or

2    statute supporting a claim based on a negligent failure to create a *policy* for emergency-response

3    procedures.  The potential liability of an individual doctor for failing to provide adequate

4    emergency medical services is not equivalent to a general failure to create a *policy* regarding

5    emergency medical procedures.

6        As for Claim Seven, there once again appears to be no basis in California law for

7    individual citizens to sue for a failure to provide competent peer review.  There are several

8    provisions in California governing medical peer review.  *See* Cal. Bus. & Prof. Code 805–809.

9    But, as with several of Meier's other claims, there is no tort liability in California for an

10   allegedly incompetent peer review.  Accordingly, there is no basis for this claim against the

11   United States under the FTCA because there would be no liability "in accordance with the law"

12   of California.  28 U.S.C. 1346(b)(1).  The government has not waived its sovereign immunity

13   for Meier's Claims Six and Seven.

14                              **D.      Claims Eight and Nine.**

15       Claims Eight and Nine of the complaint concern:  (1) the maintenance and preservation

16   of Meier's medical records, (2) an alleged failure to give him his unedited medical records, and

17   (3) an alleged failure to respond to his questions regarding the professional background of Dr.

18   Cheung.  Meier contends that support for these legal theories can be found in California

19   statutes.  Specifically, he quotes from California Health and Safety Code Section 123100, and

20   California Business and Professions Code Sections 2262, 2266, and 2282.  This order holds that

21   the torts alleged by Meier regarding medical records and the failure to respond to questions

22   have no basis in California law.

23       Health and Safety Code Section 123100 is the introduction to the chapter regarding a

24   patient's right to access health records, and states that every person has a "right to access to

25   complete information respecting his or her condition and care provided."  The parameters of the

26   patient's right are embodied in Section 123110, which sets forth, among other things, who may

27

28                                              8

United States District Court

For the Northern District of California

1   request medical records and what documents must be turned over.  Section 123110(i) states that

2   any individual who fails to turn over the necessary documents is "guilty of unprofessional

3   conduct" and may be fined one hundred dollars.  Finally, a subsequent provision, Section

4   123120, states:  "Any patient or representative aggrieved by a violation of Section 123110 may,

5   in addition to any other remedy provided by law, bring an action against the health care

6   provider to enforce the obligations prescribed by Section 123110."

7           Reading the statute, it is *possible* that Section 123120's acknowledgment of "any other

8   remedy provided by law" contemplates tort liability for a negligent failure to turn over medical

9   records.  In the Court's view, however, such a reading would be unwarranted.  It is important to

10  note here that Meier is not seeking a remedy for any economic or physical harm suffered.

11  Rather, he seeks recovery only for emotional harm.  The Court's research has uncovered no

12  California decision holding that an individual doctor can be liable for a patient's *emotional*

13  *damages* resulting from a violation of Section 123110.  Nor has Meier identified such a

14  decision.  Drawing upon a diversity-jurisdiction principle, "[i]n the absence of controlling

15  forum state law, a federal court . . . must use its own best judgment in predicting how the state's

16  highest court would decide the case."  *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314,

17  316 (9th Cir. 1980).  To the Court, it is highly doubtful that an individual doctor would be liable

18  for emotional damages arising from a negligent failure to turn over medical records.

19  Accordingly, this order holds that the claim alleged by Meier has no basis "in accordance with

20  the law" of California.  28 U.S.C. 1346(b)(1).

21          For Meier's claims regarding the maintenance of medical records and a failure to answer

22  his questions concerning patient care, he relies on California Business and Professions Code

23  Sections 2262, 2266, and 2282.  These statutory provisions govern professional conduct by

24  doctors.  For example, Section 2262 states:  "Altering or modifying the medical record of any

25  person, with fraudulent intent, or creating any false medical record, with fraudulent intent,

26  *constitutes unprofessional conduct*."  Section 2266 states:  "The failure of a physician and

27

28                                                                    9

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   surgeon to maintain adequate and accurate records relating to the provision of services to their

2   patients *constitutes unprofessional conduct*." Section 2282 provides, in pertinent part: "The

3   regular practice of medicine in a licensed general or specialized hospital having five or more

4   physicians and surgeons on the medical staff, which does not have rules established by the

5   board of directors thereof to govern the operation of the hospital, which rules include, among

6   other provisions, all the following, *constitutes unprofessional conduct*: . . . (d) Provision that

7   adequate and accurate medical records be prepared and maintained for all patients." The Court

8   has found no California statute or decision holding any individual liable in tort for acts

9   constituting "unprofessional conduct" based on the above-quoted statutory provisions. At most,

10  the relevant statutory provisions appear only to allow action by state agencies charged with

11  regulating the medical profession. *See* Cal. Bus. & Prof. Code 2234 ("The Division of Medical

12  Quality shall take action against any licensee who is charged with unprofessional conduct.").

13  They do not allow for private claims to be brought against physicians for violations of these

14  provisions.[4]

15          **E.      Claim Ten.**

16          In Claim Ten, Meier alleges that his right to privacy was violated by an unauthorized

17  disclosure of his medical records. Article I, Section I of the California Constitution states: "All

18  people are by nature free and independent and have inalienable rights. Among these are

19  enjoying and defending life and liberty, acquiring, possessing, and protecting property, and

20  pursuing and obtaining safety, happiness, and privacy." This order holds that Claim Ten of the

21

22

23

24

25          [4] At the hearing, Meier cited *Bowman v. McPheeters*, 77 Cal.App.2d 795, 800 (1947), to support his
    theory that all ten of his claims could be allowed based on a physician's fiduciary duty to a patient. *Bowman*
    recognized that "[a]s fiduciaries it was the duty of [the defendant physicians] to make a full and fair disclosure

26  to [the patient] of all facts which materially affected his rights and interests." That decision, however, dealt
    with the physician's duty to disclose as it related to triggering the statute of limitations in accordance with

27  California's discovery rule on fraud claims. *Bowman* is inapposite.

28                                                          10

1    complaint is cognizable under the FTCA under Article I, Section I of the California

2    Constitution.[5]

3            California courts recognize the tort of invasion of privacy pursuant to the California

4    Constitution.  *See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 39–40 (1994).  The

5    privacy provision "is intended to be self-executing, *i.e.*, the constitutional provision, in itself,

6    creates a legal and enforceable right of privacy for every Californian."  *Jeffrey H. v. Imai,*

7    *Tadlock & Keeney*, 85 Cal. App. 4th 345, 353 (2001).  Moreover, "the state privacy right

8    protects against invasions of privacy by private citizens as well as the state."

9            The government relies on *F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994), for the

10   proposition that "the United States simply has not rendered itself liable under [the FTCA] for

11   constitutional tort claims."  The Supreme Court's decision in *Meyer*, however, is easily

12   distinguishable because there, the plaintiff sought remedies for a *federal* constitutional

13   violation.  The Court reemphasized that the FTCA's "reference to the 'law of the place' means

14   law of the State — the source of substantive liability under the FTCA."  Accordingly, where, as

15   here, the claim at issue involves a question of *state* constitutional law, such a claim is

16   cognizable under the FTCA.  Indeed, it is recognized that the California constitutional right to

17   privacy "has been repeatedly construed to provide California citizens with privacy protections

18   broader than those recognized by the federal Constitution."  *Jeffrey H.*, 85 Cal. App. 4th at 353.

19                              *              *              *

20           In sum, this order holds that only Claims One, Two, Three, and Ten appear to be

21   cognizable under the FTCA, although as to the latter (Claim Ten), it must fail on the facts, as

22   shown below.  The remaining claims are barred by the FTCA and a lack of California decisional

23   or statutory authority supporting them.  By failing to cite to support for many claims in his

24   complaint, Meier has not met his burden of demonstrating that subject-matter jurisdiction exists

25

26           [5] Meier actually contends that *all* of his claims are cognizable under Article I, Section I.  It is clear to
     the Court that none of the other nine claims deal with his right to privacy.  Only Claim Ten alleges a violation of
27   the right of privacy under the California Constitution as that right is defined by California courts.

28                                                11

1    for those claims.  As the Supreme Court has instructed, "[j]urisdiction may not be sustained on

2    a theory that the plaintiff has not advanced."  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S.

3    804, 809 (1986).  This order now considers whether Meier has raised any genuine issues of

4    material fact as to Claims One, Two, Three, and Ten — the informed-consent and privacy-right

5    claims.

6                    **2.      WHETHER MEIER HAS ALLEGED ANY GENUINE ISSUES OF MATERIAL FACT.**

7            Under Rule 56, summary judgment is proper where the evidence shows that "there is no

8    genuine issue as to any material fact and that the moving party is entitled to judgment as a

9    matter of law."  It is not the task of the district court to scour the record in search of a genuine

10   issue of triable fact.  The nonmoving party has the burden of identifying with reasonable

11   particularity the evidence that precludes summary judgment.  *Keenan v. Allen*, 91 F.3d 1275,

12   1279 (9th Cir. 1996).  A genuine dispute as to a material fact exists if there is sufficient

13   evidence for a reasonable finder of fact to return a verdict for the nonmoving party.  On

14   summary judgment, the "evidence of the non-movant is to be believed, and all justifiable

15   inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

16   255 (1986).

17          In Meier's opposition to the motion for summary judgment, he only has two topics listed

18   under the heading "Genuine Issues of Material Facts."  Those two topics are "Informed

19   Consent" and "Emergency Care."  A simultaneously filed *declaration* by Meier, however, also

20   includes topic headings of "Ultrasound Delay," "Failure to Answer Questions and Produce

21   Medical Records" and "Privacy Rights Violations."  For the reasons discussed above, this order

22   addresses whether Meier has identified any genuine issues of material fact regarding the

23   informed-consent and privacy-right claims.

24                    **A.      Informed Consent.**

25          "Liability for negligence under California law requires proof of the following elements:

26   (1) a legal duty of care; (2) a breach of that duty; and (3) causation."  *Dimmick v. United States*,

27

28                                                              12

*United States District Court*
For the Northern District of California

1 No. C 05-0971 PJH, 2006 WL 1310449, at \*1 (N.D. Cal. May 12, 2006) (citing *Ann M. v.*

2 *Pacific Shopping Ctr.*, 6 Cal.4th 666, 673 (1993)).  The California Supreme Court has held:

3 "[W]hen the patient consents to certain treatment and the doctor performs that treatment but an

4 undisclosed inherent complication with a low probability occurs, . . . the doctor in obtaining

5 consent may have failed to meet his due care duty to disclose pertinent information."  *Cobbs*, 8

6 Cal.3d at 240–41.  With respect to the duty's parameters, that court has further explained:  "The

7 scope of a physician's duty to disclose is measured by the amount of knowledge a patient needs

8 in order to make an informed choice.  All information material to the patient's decision should

9 be given." *Truman v. Thomas*, 27 Cal. 3d 285, 291 (1980).  Material information "is that which

10 the physician knows or should know would be regarded as significant by a reasonable person in

11 the patient's position when deciding to accept or reject the recommended medical procedure."

12 　　　Meier does not contend that Dr. Cheung did not inform him of the danger of perforation.

13 Instead, he alleges that Dr. Cheung did not inform him of the potential side effects that could

14 occur in the event of a perforation, including fecal incontinence, bladder complications, a sense

15 of urinary urgency, irregular bowel movements, diarrhea, bladder complications, sexual

16 dysfunction, or permanent colostomy.  Meier also contends that, prior to the procedure, Dr.

17 Cheung failed to disclose his medical malpractice history and the fact that Cheung's license was

18 on probation.  Meier contends that had he known this information, he never would have

19 consented to the procedures (Opp. 10–11; Meier Decl. ¶¶ 2, 7).

20 　　　This order holds that, as to materiality of the medical risks, Meier has identified a

21 question of material fact that should be decided by a trier of fact.  The government has

22 presented evidence that the risks cited by Meier were described by Dr. Cheung as "very, very

23 very remote" (Dec. 7 Dowling Exh. C at 494–498).  But in California, "[t]he scope of the

24 physician's communications to the patient . . . must be measured by the patient's need, and that

25 need is whatever information is material to the decision."  *Cobbs*, 8 Cal. 3d at 245.  It is

26 plausible that the above-listed complications "would be regarded as significant by a reasonable

27

28                                                         13

1   person in the patient's position when deciding to accept or reject the recommended medical

2   procedure." *Truman*, 27 Cal. 3d at 291.  This order cannot find as a matter of law that even

3   though the risks were highly unlikely, they would not have been material to a reasonable

4   patient.  Additionally, that Meier signed a document warning of "possible problems" including

5   perforation is not dispositive regarding the sufficiency of the disclosure.  *See Quintanilla v.*

6   *Dunkelman*, 133 Cal. App. 4th 95, 115–16 (2005) (holding that "a signed consent is not entitled

7   to conclusive proof of informed consent").

8           With respect to Dr. Cheung's duty to disclose his malpractice record, Meier contends

9   that "Dr. Cheung . . . voluntarily surrendered his New York License while he was under

10  investigation on claims of professional misconduct and 'moral unfitness.'"  According to Meier,

11  Cheung was also sued twice for wrongful death (Meier Decl. ¶ 7).  Although there is little

12  documentation of Dr. Cheung's malpractice history in the record, at oral argument, the

13  government conceded that Dr. Cheung's licence had been placed on probation.  Also before

14  performing the colonoscopy on Meier, Dr. Cheung had also been sued for medical malpractice.

15  It is certainly plausible that a physician's malpractice history "would be regarded as significant

16  by a reasonable person in the patient's position when deciding to accept or reject the

17  recommended medical procedure." *Truman*, 27 Cal. 3d at 291.  The government has cited to no

18  California court decision holding that a physician's malpractice history is not "material" to a

19  plaintiff's decision to undergo a medical procedure.  This order declines to decide on the

20  present record and as a matter of law that Dr. Cheung owed no duty to Meier to disclose his

21  malpractice or disciplinary record.  This is another issue for the trier of fact to resolve.

22          In addition to the duty and breach-of-duty requirements, California law also requires a

23  plaintiff to show causation.  "[T]here must be a causal relationship between the physician's

24  failure to inform and the injury to the patient." *Dimmick*, 2006 WL 1310449, at *2.  This means

25  that "a prudent person in the plaintiff's position would have declined the procedure if

26  adequately informed of the risks." *Warren v. Schecter*, 57 Cal. App. 4th 1189, 1206 (1997).

27

28                                                14

1   Causation is evaluated under an objective standard, "which in effect equates the plaintiff with a

2   reasonable person [and] protects the defendant-physician from the self-serving testimony of a

3   plaintiff who inevitably will assert at trial that he or she would have refused the procedure if

4   duly advised of the risk."  Meier has, of course, stated that he would not have consented to the

5   colonoscopies had he known either about the potential complications or about Dr. Cheung's

6   malpractice history.  The government has not provided any evidence to rebut his claim, other

7   than to note that the chances of the complications were remote.  This order declines to find as a

8   matter of law that a reasonable person in Meier's position, having been told the information

9   Meier now claims he was entitled to, also would have chosen to proceed with the

10  colonoscopies.  This is a matter for the trier of fact.

11          This order should not be construed as a positive declaration that the government was

12  obligated to disclose the items in question.  It only holds that the question is one that deserves a

13  trial.

14                          **2.        Privacy Right Violation.**

15          Above, this order found that California recognizes an individual's right to sue for an

16  invasion of privacy by another person.  In *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th

17  1, 39–40 (1994), the California Supreme Court established an analytical framework for

18  evaluating a claim for invasion of privacy.  "[A] plaintiff alleging an invasion of privacy in

19  violation of the state constitutional right to privacy must establish each of the following:  (1) a

20  legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances;

21  and (3) conduct by defendant constituting a serious invasion of privacy."

22          With respect to his medical records, Meier satisfies the first prong of the test.  "[I]t has

23  long been recognized that the zones of privacy created by article I, section I [of the California

24  Constitution], extend to the details of one's medical history."  *Jeffrey H.*, 85 Cal. App. 4th at

25  353 (internal quotations omitted).  But Meier's claim has no merit on the other two prongs.

26

27

28                                              15

United States District Court

For the Northern District of California

1      From what can be discerned from Meier's declaration, he is alleging an unauthorized

2  disclosure of medical records, specifically his HIV-test results, *to himself* (Meier Decl. ¶ 26).

3  Prior to this litigation, Meier made numerous written requests to the VA to provide him with,

4  for example, "all documents and printouts of all computer entries . . . relating, in any fashion,

5  to: . . . [his] December 19, 2002 colonoscopy and/or its complications."  He also included an

6  instruction to "PRODUCE EVERYTHING!  WITHOUT EXCEPTION!!!" (Caston Exh. C).

7  Meier contends that the VA *over*produced his medical history to him when it provided him with

8  sixteen years of his medical records, including HIV-test results.  Meier has pointed to no facts

9  supporting any inference that the medical records were disclosed to anyone else in violation of

10  his right to privacy.

11      This order holds that "in the circumstances" of Meier's request, he had no expectation of

12  privacy in his medical records because he was demanding that they be disclosed to him.  No

13  court would conclude that there was an invasion of privacy when Meier was provided with his

14  own medical records.  In the same vein, it would be impossible for any reasonable person to

15  conclude that the VA had engaged in a "serious invasion of [Meier's] privacy" by turning over

16  his medical records to him, even if those records were not the particular documents he

17  requested.  Meier has no claim for invasion of privacy against the government.

18                                        **CONCLUSION**

19      For the foregoing reasons, the government's motion for summary judgment is **GRANTED**

20  **IN PART** and **DENIED IN PART**.  Trial will be limited to the issue of whether Dr. Cheung failed

21  to obtain Meier's informed consent when he did not inform Meier of:  (1) various medical risks

22  that may have arisen as a result of the colonoscopies, or (2) Dr. Cheung's medical malpractice

23  and disciplinary history.

24      Meier also filed twenty-one pages of evidentiary objections to the government's

25  declarations and exhibits.  Meier objects to the deposition transcripts filed by the government

26  because they lacked certifications signed by the reporters.  *See Orr v. Bank of America, NT &*

27

28                                              16

*United States District Court*
For the Northern District of California

1    *SA*, 285 F.3d 764, 774 (9th Cir. 2002).  The government filed the proper certifications following

2    oral argument on the instant motion.  Meier's objection to those declarations is **OVERRULED**.

3    The only exhibits objected to by Meier and relied on by this order were the exhibits attached to

4    Shannon Caston's declaration.  Meier's objections to these exhibits as hearsay, speculation, and

5    opinion testimony of a lay witness are **OVERRULED**.  In any event, those documents have not

6    been relied on for their truth to rule against Meier.  The remainder of his objections are

7    **OVERRULED** as moot.  Finally, Meier's request for judicial notice that his perforated colon

8    caused pain and suffering is **DENIED**.

9

10           **IT IS SO ORDERED.**

11

12    Dated:  December 22, 2006

                                            WILLIAM ALSUP
13                                          UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          17